UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| HULETT CORPORATION | ) Bankruptcy No. 05-B-63640 |
| Debtor. | ) |
| | ) |
| THOMAS B. SULLIVAN, | ) |
| as Chapter 11 Trustee | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 07-A-00917 |
| | ) |
| UNITED STATES OF AMERICA, and | ) |
| ROLAND MACHINERY CO. | ) |
| Defendants | ) |

## MEMORANDUM OPINION ON
## UNITED STATES' MOTION FOR SUMMARY JUDGMENT

Hulett Corporation ("Debtor") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, and its Plan of Reorganization was confirmed. Under the Plan, Thomas B. Sullivan (the "Trustee") was appointed as Trustee of the Creditor's Trust and Disbursing Agent. The Trustee filed this Adversary proceeding pursuant to 11 U.S.C. § 506 and Rule 7001(2) Fed. R. Bankr. P., seeking determination of the priority of competing liens claimed against property of the bankruptcy estate on behalf of the United States by and through the Internal Revenue Service (the "IRS"), and Roland Machinery Co. ("Roland").

This Adversary and pending Motion by the IRS for Summary Judgment present the unusual legal question of which claimant has priority as between the IRS as a tax lien claimant and a secured creditor when they both recorded their liens at the exact same moment. The IRS argues that it has priority as a matter of public policy, because, as a claimant of taxes due, it is an

"involuntary creditor." Roland urges the Court to follow an opinion of the Court of Appeals for the Fifth Circuit, which held that the IRS should be treated like any other lienholder and share proceeds *pro rata* in the event of simultaneous recordation. The IRS has moved for Summary Judgment. The issues have since been fully briefed by the interested parties.[1]

For reasons stated herein, it is found and held that the reasoning of Supreme Court precedent cited by the IRS is applicable here and, therefore, its Motion for Summary Judgment will be allowed and the IRS wins priority over the entire fund in dispute to the extent of its tax lien.

## UNDISPUTED FACTS

The following facts are undisputed:

1. The IRS and Roland are creditors of Debtor.

2. The IRS is a creditor of Debtor by virtue of Debtor's failure to pay federal employment taxes for the second quarter of the 2004 taxable year. On October 11, 2004, the IRS assessed taxes against Debtor in the amount of $65,112.73, creating a lien for that amount as of that date in favor of the IRS. See 26 U.S.C. §§ 6321, 6322.

3. Pursuant to 26 U.S.C. § 6323(f), the IRS recorded a Notice of Federal Tax Lien (the "NFTL") concerning the October 11th tax lien with the Illinois Secretary of State on

---

[1] This Adversary proceeding resembles an interpleader action insofar the Trustee, a disinterested third party, is seeking determination of the rights between two competing lien claimants to funds held by the Trustee as part of the Bankruptcy Estate (the "Estate"). Insofar as the Trustee is merely seeking a determination of the parties' respective rights so that he can complete administration of and close the Estate, the Estate's ultimate interests are not affected by disposition of the pending Motion. Therefore, the Trustee did not file any briefs in connection therewith.

February 14, 2005. The NFTL bears a date-time stamp from the Secretary of State as having been received on February 14, at 4:30 p.m.

4. Pursuant to a UCC Financing Statement (the "UCC-1") filed with the Illinois Secretary of State on February 14, 2005, Roland has a secured claim against Debtor for $80,854.52, plus $16,341 in legal fees. The UCC-1 grants Roland a security interest in existing and after-acquired property. The UCC-1 bears a date-time stamp from the Secretary of State as having been received on February 14, at 4:30 p.m.

5. On March 27, 2007, the Trustee sold substantially all of Debtor's tangible personal property for $125,000.

6. Additionally, the Trustee has recovered settlement amounts totaling $77,820.26 on two outstanding accounts receivable held by Debtor.

7. It is not established on the record presented whether or not the Debtor held title to some or all of the property in the bankruptcy estate held by the Trustee as of February 14, 2005, at 4:30 p.m., or whether some of that property was after-acquired.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This Adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## CONCLUSIONS OF LAW

The pending Motion for Summary Judgment presents a most unusual legal question: Who has priority, as between the IRS as a tax lien creditor and a private secured creditor, when they each recorded their liens at the exact same moment? Because of the infrequency with which such an unlikely scenario has arisen, there is little case law directly on point. Roland urges the Court to follow the holding in Southern Rock, Inc. v. B & B Auto Supply, where a panel of the United States Court of Appeals for the Fifth Circuit "read [26 U.S.C.] § 6323 as requiring [the secured creditor] and the government to share in the fund in proportion to their claims" in the case of simultaneous perfection. 711 F.2d 683, 689 (5th Cir. 1983). The IRS argues that Southern Rock was implicitly overruled by the Supreme Court's holding in U.S. v. McDermott, 507 U.S. 447 (1993), and that under reasoning of that precedent the IRS should prevail as a matter of public policy because, as a tax creditor, it is an "involuntary creditor."

### *Summary Judgment Standard*

The IRS brought the pending Motion pursuant to Rule 56 Fed. R. Civ. P. made applicable in bankruptcy by Rule 7056 Fed. R. Bankr. P. According to Rule 56(c), "The judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Tyler v. Runyon, 70 F.3d 458, 464 (7th Cir.1995)).

---

[2] Rule 56(c) was amended effective December 1, 2007, to say "should" instead of "shall." This Adversary was filed on September 24, 2007, and therefore, the prior version of the Rule applies.

- 4 -

### *The Federal Tax Lien Act of 1966*

If a taxpayer fails to pay an assessed tax, the United States has a lien against all of the taxpayer's property. According to the Federal Tax Lien Act of 1966 (the "Act"):

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property rights and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.

The Supreme Court, in interpreting similar statutory language, earlier held that "the tax system of the United States is [not] subject to the recording laws of the states," and therefore, an unrecorded federal tax lien prevailed over a claim under state law. United States v. Snyder, 149 U.S. 210, 212-15 (1893).

After adoption of the Sixteenth Amendment to the Constitution in 1913, which provided for direct taxation of income, Congress began to exhibit a growing awareness of the importance of protecting the commercial expectations of non-governmental creditors, and amended the federal tax lien statute several times between 1913 and 1964 to protect those creditors. William T. Plumb, Jr., Federal Liens and Priorities-Agenda for the Next Decade, 77 Yale L.J. 228, 229 (1967). During that period, the Supreme Court developed the "choateness doctrine" in furtherance of the common law principle of "first in time is first in right." Id. In order to be first in time, the state law lien had to be "choate;" that is "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. City of New Britain, Conn., 347 U.S. 81, 84 (1954). The practical effect of the choateness doctrine was that only liens that had been reduced to judgment received priority over federal tax liens. Plumb,

supra, at 230. Thus, prior to the Federal Tax Lien Act of 1966 contractual security interests were vulnerable to subordination by a federal tax lien to the extent that the security included after-acquired property or secured future advances, id. at 231, because the property subject to such liens and amount of the same were not established.

According to the Report of the Senate Finance Committee, the Act "is in part an attempt to conform the lien provisions of the internal revenue laws to the concepts developed in this Uniform Commercial Code." S. Rep. No. 89-1708, 89th Cong. (1966), as reprinted in 1966 U.S.C.C.A.N. 3722, 3722. This was made clear in 26 U.S.C. § 6323(a):

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

### *Holding in Southern Rock, Inc. v. B & B Auto Supply*

In Southern Rock, a subcontractor was fired from a construction project contracted for the U.S. Army Corps of Engineers. 711 F.2d at 684. The subcontractor's surety recorded a financing statement evidencing a security interest in the subcontractor's accounts receivable from the project. The federal government recorded a tax lien against the subcontractor for failure to pay withholding, FICA, and unemployment taxes. The tax lien and financing statement were filed at the exact same moment. The general contractor filed an interpleader action to determine the priority between the government and the insurer. Id.

The Government argued in Southern Rock that its levy on the general contractor was sufficient to give it priority over the surety. Id. at 686. The district judge agreed. Id. at 684. The Fifth Circuit reversed that ruling, holding that "service of a notice of levy is not equivalent to

filing a notice of lien. The only way the government can obtain priority over a judgment lien creditor is by complying with the statutory requirement of 26 U.S.C. § 6323(a), (f)...." Id. at 688.

The Fifth Circuit panel, therefore, had to address the issue of simultaneous filing. The opinion's conclusion relied heavily on legislative history indicating "that the purpose of Federal Tax Lien Act was to conform tax liens to Article 9 security interests...." Id. at 689 (citing S. Rep. 89-1708). Specifically, it held that the pre-Act common law requirements concerning choateness, including the rule that a tie results in the government receiving priority to the affected property, had been superceded by the Act. Id. (citing Aetna Ins. Co. v. Texas Thermal Indus., Inc., 591 F.2d 1035, 1038 (5th Cir. 1979)). The opinion reasoned that the best way to achieve the purpose of the Act "is to treat the government like any other creditor." Id. Thus, the court "read § 6323 as requiring [the surety] and the government to share in the fund in proportion to their claims." Id.

Roland argues here that this Court *must* follow Southern Rock as "established precedent." (Roland's Response at 7 ¶ 10.) However, this argument misstates the principles of *stare decisis*. The most important factor in determining whether an opinion is authoritative is the relationship between the court that decided the issue and the court that is later considering it as precedent. Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1123 (7th Cir. 1987). In the interest of uniformity of federal law, the decisions of courts of appeal in other circuits are entitled to consideration, but are not given automatic deference. Id. Thus, the Fifth Circuit's opinion in Southern Rock is persuasive authority, but it is not binding here.

### *Reasoning of Southern Rock Rejected in Seventh Circuit*

The holding in J.D. Court, Inc. v. United States, 712 F.2d 258 (7th Cir. 1983), militates against following Southern Rock in this case. In J.D. Court, a Seventh Circuit panel affirmed the district court's application of the "choateness doctrine," finding that the doctrine "is recognized in this circuit as a valid legal principle, not abrogated by the Tax Lien Act." 712 F.2d at 263 (citing Sgro v. United States, 609 F.2d 1259, 1261 (7th Cir. 1979)). According to the earlier opinion in Sgro:

> Notwithstanding the attachment of a tax lien upon assessment, [§ 6323(a)] provides that purchasers, holders of security interests, mechanics lienors, and judgment lien creditors will prevail if their interest *attaches* before the Government files appropriate notice. *Attachment* occurs at the moment the interest becomes choate, which is a question of federal law.

609 F.2d at 1261 (emphasis added). This characterization of the mechanics of the Act did not precisely follow the language of 26 U.S.C. § 6323(a), which provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."

The terms "purchaser," "holder of a security interest," and "mechanic's lienor" are defined in a separate provision of the Act. See 26 U.S.C. § 6323(h). "Holder of a security interest" (which is the applicable lien interest involved in the case at bar) is defined in the statute as:

> [A]ny interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a

subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. 6323(h)(1).

Nowhere does 26 U.S.C. §§ 6323(a), (h)(1) mention "attachment." Under the statute, the question is not whether the state law lien has "attached" to the taxpayer's property, but whether the creditor is a holder of a security interest pursuant to 26 U.S.C. § 6323(h)(1).

Under 26 U.S.C. § 6323(h)(1), the property has to be in existence and the holder has to have parted with money. These are similar to requirements under the choateness doctrine that the property subject to the lien, and the amount of the lien be established. Thus, after-acquired property and future advances are not generally protected from subordination under the Act, though 11 U.S.C. § 6323(d) provides a safe harbor for future advances made within forty-five days after recording of a tax lien. However, interest and other charges that might be added to a secured claim are protected even though they have not been reduced to judgment as required by the choateness doctrine if "the interest has become protected under local law against a subsequent judgment lien." 26 U.S.C. § 6323(h)(1).

The Act creates a federal right, but the extent of that right is partly determined by state law. See Southern Rock, 711 F.2d at 685 (citing Aquilino v. United States, 363 U.S. 509, 513 (1960)) (the Act determines priorities, but "those priorities may turn on such questions of state law as whether property existed to which a lien might attach and whether an interest was protected against a later judgment lien."). See also United States v. Rotherman, 836 F.2d 359, 362 (7th Cir. 1988) ("Once state law determines the taxpayer's property interest, federal law governs the consequences of that determination.").

Thus, contrary to the Fifth Circuit's holding in Southern Rock, under J.D. Court and Sgro, the purpose of the Act was held not to create a "first in time, first in right" system of priority for secured creditors vis-a-vis a competing federal tax lien. Because Seventh Circuit panels have specifically rejected the reasoning upon which Southern Rock is based, see J.D. Court, 712 F.2d at 263, the holding in Southern Rock will not be followed here.

### Application of Illinois Law

Since Roland's claim rests on a recording in Illinois, the law of this state comes into play here.

A "security agreement" under Illinois law is an agreement that creates or provides for a security interest. 810 ILCS 5/9-102. "Attachment" is required to enforce the security interest against the debtor, 810 ILCS 5/9-203(a), and the security interest becomes enforceable when (1) value has been given, (2) the debtor has rights in the collateral, and (3) the debtor has authenticated a security agreement describing the collateral. 810 ILCS 5/9-203(b). See also 68A Am. Jur. 2d Secured Transactions § 133 ("Coalescence of all three elements is called 'attachment' and signifies the moment when a security interest becomes enforceable.").

For purposes of determining priority, Illinois follows a "multiple" lien theory of attachment. 810 ILCS 5/9-323(a); Uni Imports, Inc. v. Aparacor, Inc., 978 F.2d 984, 987 (7th Cir. 1992). For future advances under a line of credit, each advance creates a new security interest, each of which arises no earlier than the time the creditor extends value. Id. Similarly, by definition a security interest does not attach to after-acquired property until the debtor has rights in that collateral. 810 ILCS 5/9-203(a)(2). Thus, "attachment" is necessary under Illinois law to enforce a security interest against the debtor, but such interest does not attach to cash

advances or after-acquired property until value has been given and the debtor has rights to the collateral.

However, attachment is not sufficient to obtain priority over a third party. While "attachment" relates to the creation of a security interest by virtue of the execution of a security agreement, "perfection" is an additional step which makes the security interest effective for obtaining priority against third parties. U.S. v. Gleaners & Farmers Co-operative Elevator Co., 481 F.2d 104, 106 n.4 (7th Cir. 1973). A security interest is "perfected" when it has attached and all steps for perfection under section 9-310 through 9-316 have been satisfied. 810 ILCS 5/9-308. The "filing" of a financing statement is the most common form of perfection. 810 ILCS 5/9-310, and perfection is required in Illinois to obtain priority over other creditors.

### *Holding in United States v. McDermott*

In McDermott, the United States assessed unpaid federal taxes against the McDermotts on December 9, 1986. 507 U.S. at 448. Pursuant to 26 U.S.C. §§ 6321, 6322, a tax lien arose as of that date. However, the government did not record a notice of tax lien until September 9, 1987. On July 6, 1987, Zions First National Bank, N.A. (the "Bank") recorded a state court judgment that it obtained against the McDermotts. Both the tax lien and the judgment lien gave the lienholders rights in after-acquired property. On September 23, 1987, the McDermotts acquired title to certain real property. The McDermotts filed an interpleader action to determine the priority between the government and the Bank to the after-acquired property. Id. at 448-9.

The Supreme Court opinion held that the Bank's lien was not perfected at the time of recordation and, therefore, it did not have priority over the federal tax lien pursuant to 26 U.S.C.

§ 6323(a). Id. at 453. The opinion reasoned that a state lien does not receive priority under the Act until it is "perfected," McDermott, 507 U.S. at 449.[2/]

In McDermott, the Supreme Court held that the judgment lien in that case was not "perfected" in the sense that the identity of the lienor, *the property subject to the lien*, and the amount of the lien are established. Id. at 449 (internal quotations omitted, emphasis in original). In holding that a judgment lien cannot be perfected in after-acquired property until that property is identifiable, id. at 450-51, the opinion implicitly affirmed the validity of the old choateness doctrine.

However, "judgment creditor" is not a defined term under the federal Act. Because the amount of lien has been reduced to judgment, a judgment creditor's lien is definite enough to satisfy the choateness requirement that "the amount of lien [be] established." Nevertheless, Treasury Department regulation 26 U.S.C. § 301.6323(h)-1(g) defines "judgment lien creditor" to mean:

> [A] person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money..... A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date.

See also McDermott, 507 U.S. at 453 n.6.

---

[2/] In contrast, in the 1979 Sgro opinion, a Seventh Circuit panel used the term "attachment." 609 F.2d at 1261. The Act does not use either of the terms "perfection" or "attachment." Part of the confusion in interpreting the Act is that "attachment," "filing" and "perfection" are not interchangeable terms under the Uniform Commercial Code (the "UCC"). See discussion of Illinois law above.

under local law against a subsequent judgment lien." Id. at 362. McDermott and Rotherman held at least that the choateness doctrine survives to the extent that certain elements of the doctrine have been codified by the Act. See cf. S. Rep. 89-1708, 1966 U.S.C.C.A.N. at 3724-25 (The Act provides that "the various types of interests defined in this provision are to have a priority over a nonfiled Federal tax lien if they come within the definitions of these terms ... *whether or not in all other regards they are definite and complete at the time notice of the tax lien is filed.*") (Emphasis added). Just as "attachment," "filing" and "perfection" are not interchangeable under UCC Article 9, choateness should not be used as shorthand for the statutory requirements of the Act.

According to McDermott, "Under the Uniform Commercial Code ... a security interest in after-acquired property is generally not considered perfected when the financing statement is filed, but only when the security interest has attached to particular property upon the debtor's acquisition of that property." 507 U.S. at 452 (citations omitted). Because the McDermotts acquired the real estate after the government filed its notice of tax lien, the Bank was not first in time. Id. at 452-53. The opinion went on to hold that the federal tax lien was not first in time either, because it too was not perfected in the UCC Article 9 sense of the word until it attached to the after-acquired property. See id. at 453. Nevertheless, "the filing of notice renders the federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property.... [T]he federal tax lien is ordinarily dated, for purposes of 'first in time' priority against § 6323(a) competing interests, from the time of filing, regardless of when it attaches to the subject property." Id. at 454.

There was further discussion of the issue directly involved in this case. In McDermott, the Bank argued that the common law "first-to-record" should be followed in the case of simultaneous perfection. Id. However, the opinion held that the "first-to-record" rule is inappropriate when the government is a creditor, because it is an "involuntary creditor" and could not bargain for additional security to protect against the risk of nonpayment. Id. at 454-55. Collection of taxes is essential to the proper functioning of government. See Snyder, 149 U.S. at 214 ("A government that cannot, by self-administered methods, collect from its subjects the means necessary to support and maintain itself in the execution of its functions, is a government merely in name."). A private party can negotiate for additional security or decline to extend credit, but "[t]he Government ... cannot indulge the luxury of declining to hold the taxpayer liable for his taxes." McDermott 507 U.S. at 455 (citing Snyder, 149 U.S. at 214). See also Schreiber v. United States (In re Schreiber), 163 B.R. 327, 332 (Bankr. N.D. Ill. 1994) ("Tax liens are distinct from judgment liens and are accorded preferred treatment. Taxing authorities are granted such treatment because they are involuntary creditors; they can neither choose their debtors nor take security in advance of the time the taxes become due."). The Supreme Court opinion therefore, held that "[t]he federal tax lien must be given priority" in the case of simultaneous attachment. McDermott, 507 U.S. at 455.

*The McDermott Reasoning Applies There*

Roland argues that McDermott is distinguishable, because it resolved competing claims to after-acquired property, and that whether collateral involved in this case was after-acquired or not cannot be determined on the record presented, thus presenting a genuine issue of material

fact. (Roland's Response at 4 ¶ 5.) This argument misstates the principles of *stare decisis*, and is without merit.

The factual circumstances of cases are rarely identical, and yet the law has to address many situations that are similar but not identical. Precedent is interpreted by drawing analogies between the precedent and the issue(s) at bar that are similar, and distinguishing precedent that is different from the present issue(s).

While the facts of McDermott are not the same as those presented here, the reasoning of that opinion is surely applicable here. Because the collateral in that case was after-acquired property, the opinion held that both the state law claim and federal tax lien attached and, therefore, became perfected at the same instant. Id. at 453. That holding is applicable to the facts here, where the IRS and Roland recorded their respective lien interests at the same instant. The reasoning in McDermott was that the government should receive priority by virtue of its status as an "involuntary creditor." Id. at 454-55. If a federal tax lien takes priority over a security interest that attaches at the same time, it must follow that a federal tax lien has priority over a simultaneously filed or recorded security interest. Therefore, the IRS' federal tax lien in this case must have priority over Roland's security interest.

### *If Any Property Here Was "After-Acquired," the IRS Still Takes It*

Roland also argues that whether some of the collateral at issue here is after-acquired is a genuine issue of material fact not determined by the undisputed facts. On March 27, 2007, the Trustee sold substantially all of Debtor's tangible personal property for $125,000. The parties do not dispute that this $125,000 is not after-acquired property, but is proceeds from sale of collateral to which their respective liens had previously attached. For reasons stated above, the

IRS has a priority lien claim against that fund. In addition, the Trustee recovered settlement amounts totaling $77,820.26 on two outstanding accounts receivable held by Debtor. It is these settlement amounts which Roland argues may be after-acquired, leaving a genuine issue of material fact. (Roland Response at 5 ¶ 6.)

However, even assuming *arguendo* that the latter fund might constitute after-acquired property, Roland still loses its claim of priority over it. "[T]he existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law." Schreiber, 163 B.R. at 331 (citing Liberty Lobby, 477 U.S. at 248; Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir. 1987)). Even though Roland's interest in the $125,000 was perfected under UCC Article 9 at the time of recording, Roland's interest in the settlement proceed, which it now contends may be after-acquired property, did not attach and, therefore, was not perfected, until that fund came into existence. The relative priorities between a federal tax lien and a secured creditor in after-acquired property was the precise issue resolved in the government's favor in McDermott. Assuming that the settlement proceeds are after-acquired property, Roland's security interest was not perfected against a subsequent hypothetical judgment creditor because that interest had not attached to that collateral and, therefore, it is not entitled to priority against the IRS. See 26 U.S.C. 6323(h)(1); McDermott, 507 U.S. at 455. Thus, whether or not the settlement proceeds are actually after-acquired property would not change the outcome under applicable law and, therefore, that question does not raise an issue of material fact.

### The Government Does Not Always Win

If Roland had recorded earlier than the IRS, its security interest would have attached to the $125,000 sale proceeds and, therefore, it would have been protected under 26 U.S.C.

§ 6323(a). If that had happened, there could have been a triable issue as to when Roland's security interest attached to the after-acquired settlement fund. If it was after-acquired property, then the government would still have priority. See McDermott, 507 U.S. at 455. However, if Debtor had rights in disputed collateral at the time Roland recorded its financing statement (i.e., it was not after-acquired property), then Roland would have had priority.

Thus, the reasoning here should not be read to say that the Government always wins. Contra id. at 455 ("A strong "first-to-record" presumption is particularly out of place under the present tax-lien statute, whose general rule is that the tax collector prevails even if he has not recorded at all.") (citing 26 U.S.C. §§ 6321, 6322; Snyder, 149 U.S. at 212-15). This is a puzzling statement in the McDermott opinion, considering that the legislative history accompanying the Act made clear that "the various types of interests defined in this provision are to have a priority over a *nonfiled Federal tax lien* if they come within the definitions of these terms...." S. Rep. 89-1708, 1966 U.S.C.C.A.N. at 3724-25 (emphasis added). In addition, the *dicta* in McDermott that the "tax collector prevails even if he has not recorded at all" totally disregards the statutory language of 26 U.S.C. § 6323(a). Thus, while Snyder can still be read to stand for the proposition that the federal priority scheme preempts state law, see 149 U.S. at 212-15, it is apparent that the proposition that the Government always wins is no longer tenable in light of the Act.

But Roland did not record earlier, so it cannot prevail against the IRS claim and here the Government does win.

15, it is apparent that the proposition that the Government always wins is no longer tenable in light of the Act.

But Roland did not record earlier, so it cannot prevail against the IRS claim and here the Government does win.

## CONCLUSION

Based on the Supreme Court's holding in McDermott, it is held under the Federal Tax Lien Act of 1966 that a federal tax lien takes priority over a simultaneously recorded UCC security interest. There is no genuine issue of material fact and the IRS is entitled to judgment as a matter of law. For the foregoing reasons, a separate Order will be entered granting the United State's Motion for Summary Judgment and priority over all funds held by the Trustee that may still be available to creditors.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 10th day of June 2008.

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on June 10, 2008, I caused to be mailed by United States first class mail copies of the foregoing Memorandum Opinion to the following:

David Lloyd
Grochocinski Grochocinski & Lloyd Ltd
1900 Ravinia Place
Orland Park, IL 60462
Counsel for Plaintiff

John L. Schoenecker,
James E. Brown,
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, DC 20044
Counsel for Defendant, USA

Thomas W Lynch
Thomas W Lynch & Associates PC
9231 S Roberts Rd
Hickory Hills, IL 60457
Counsel for Karen Butler and Sheila Paravich

James R. Mata
Nigro & Westfall, P.C.
1793 Bloomingdale Road
Glendale Heights, IL 60139
Counsel for Defendant Roland Machinery Co.

*Dorothy Clay*
Secretary/Deputy Clerk